*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1889**

State of Minnesota,
Respondent,

vs.

James Maurice Williams, Jr.,
Appellant.

**Filed November 16, 2015
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-13-33508

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public
Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Worke, Judge; and

Kalitowski, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of second-degree assault and theft of a motor vehicle, appellant argues that he is entitled to a new trial because: (1) the district court erred by denying his request to call a witness to testify about the victim's prior inconsistent statement regarding the nature and extent of her injuries from the assault; and (2) the district court erred by sentencing him for both convictions of second-degree assault and theft of a motor vehicle because the offenses were committed during a single behavioral incident. We affirm.

## FACTS

On the evening of September 26, 2013, appellant James Maurice Williams, Jr., entered the apartment of his girlfriend, M.C., and waited for her to come home. They had been dating for eight months, and M.C. had previously given Williams a copy of her apartment key. When M.C. arrived home a little before midnight, Williams hid in the closet and listened to her talk on the phone with her ex-boyfriend, who lived upstairs, for approximately two hours. M.C. talked at length about the problems she was having in her relationship with Williams. Eventually, in the early morning hours of September 27, Williams emerged from the closet and assaulted M.C., punching her in the face and cutting her face, neck, and chest with a knife. M.C. tried to defend herself, which resulted in deep cuts to her fingers. Williams then took M.C.'s car keys, left the apartment, and drove away in her car. M.C. was taken to the emergency room and treated for her injuries.

In June 2014, Williams was charged by amended complaint with first-degree assault, second-degree assault, terroristic threats, and theft of a motor vehicle. The state later dismissed the terroristic threats count. A jury trial was held in July 2014. The jury found Williams guilty of second-degree assault, third-degree assault, and theft of a motor vehicle, but acquitted him of first-degree assault. The district court entered convictions of second-degree assault and theft of a motor vehicle. The district court imposed two concurrent executed sentences: 54 months for second-degree assault, and 23 months for theft of a motor vehicle. This appeal followed.

## D E C I S I O N

### I.

Williams argues that the district court abused its discretion by not admitting extrinsic evidence of M.C.'s prior inconsistent statement regarding the nature and extent of the injuries she sustained as a result of the assault. "Evidentiary rulings rest within the discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) (quotation omitted). Extrinsic evidence of a prior inconsistent statement by a witness is admissible for impeachment purposes if "the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Minn. R. Evid. 613(b).

At trial, M.C. testified that she received stitches for the cuts on her fingers. She testified that she still had difficulty bending two of her fingers because the fingertips were numb, although she was able to "grab and grip things." After M.C. was dismissed as a

witness, defense counsel sought to admit extrinsic evidence of an alleged prior inconsistent statement M.C. had made during an interview with an investigating prosecutor in which she stated that it took months for her to regain the feeling in her fingers. Defense counsel sought to have the prosecutor testify about M.C.'s statement during the interview in order to impeach M.C.'s trial testimony.

The district court did not allow defense counsel to call the prosecutor because M.C. was not given an opportunity to admit or deny her prior statement. Earlier at trial, prior to M.C.'s testimony about the numbness in her fingers, defense counsel had asked M.C. whether she remembered the February 2014 interview, and M.C. stated that she did not. At no point did defense counsel ask M.C. about the prior statement itself.

The district court did not abuse its discretion by excluding extrinsic evidence of M.C.'s prior statement because M.C. was never afforded the "opportunity to explain or deny" the prior statement. Minn. R. Evid. 603(b); *State v. Martin*, 614 N.W.2d 214, 224 (Minn. 2000) ("The witness must be given a prior opportunity to admit, deny or explain the inconsistency in order for the statement to be admissible to impeach the witness."); *see State v. Richards*, 495 N.W.2d 187, 194 (Minn. 1992) ("[The witness] was not confronted with these statements on cross-examination, so this extrinsic evidence was properly excluded.").

**II.**

Williams also argues that the district court erred by sentencing him for both second-degree assault and theft of a motor vehicle because the offenses were committed during a single behavioral incident. By sentencing Williams on both convictions, the

4

district court implicitly found that the conduct underlying the offenses was not a single behavioral incident.

Generally, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2012). "The purpose of [section 609.035] is to limit punishment to a single sentence where a single behavioral incident result[s] in the violation of more than one criminal statute." *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995) (quotation omitted). "In determining whether intentional crimes are part of a single behavioral incident, a court focuses on the factors of time and place and considers whether the segments of conduct were motivated by a desire to obtain a single criminal objective." *State v. Brown*, 597 N.W.2d 299, 305 (Minn. App. 1999), *review denied* (Minn. Sept. 14, 1999). To obtain multiple sentences, the state must prove by a preponderance of the evidence that the defendant's conduct was not part of a single behavioral incident. *State v. Williams*, 608 N.W.2d 837, 841–42 (Minn. 2000).

This court may review whether the record supports the district court's finding that the conduct underlying two offenses was not a single behavioral incident. *State v. Nordby*, 448 N.W.2d 878, 880 (Minn. App. 1989). The district court's finding will not be reversed on appeal unless it is clearly erroneous. *Effinger v. State*, 380 N.W.2d 483, 489 (Minn. 1986). Here, Williams did not argue at sentencing that the offenses were committed during a single behavioral incident. But, the protection against multiple sentencing afforded by Minn. Stat. § 609.035, subd. 1, cannot be forfeited. *State v. Johnson*, 653 N.W.2d 646, 650 (Minn. App. 2002).

5

The record supports the district court's finding that the offenses were not committed during a single behavioral incident. Williams is correct that the assault and the theft occurred within minutes of each other, and they occurred in a similar place: M.C.'s apartment complex. But, there is no indication that the offenses "were motivated by a desire to obtain a single criminal objective." *Brown*, 597 N.W.2d at 305. The assault was motivated by a desire to physically injure M.C., while the theft was motivated by a desire to take and use M.C.'s vehicle. Moreover, this is not "a case where one crime was committed in furtherance of the other." *State v. Edwards*, 380 N.W.2d 503, 511 (Minn. App. 1986). Williams could have assaulted M.C. without stealing her vehicle, and vice versa. Therefore, the underlying conduct was divisible.

Williams argues that he stole M.C.'s car to avoid apprehension for the assault. "[M]ultiple sentences may not be used for two offenses if the defendant[] substantially contemporaneously committed the second offense in order to avoid apprehension for the first offense." *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn. 1994). But, Williams' own testimony belies this argument. He testified that, once he exited M.C.'s closet, his original intention was to get his belongings out of M.C.'s car and walk home. He also testified that M.C. injured herself by falling into a door and cutting herself on a pair of scissors. He then testified that, as the situation was unfolding, he decided to steal M.C.'s car because he was afraid that M.C.'s ex-boyfriend was coming to harm him—not to avoid apprehension for the assault.

The district court did not clearly err by finding that the conduct underlying the two offenses was not a single behavioral incident, and therefore the district court did not err by imposing a sentence on both convictions.

**Affirmed.**