STATE of Minnesota, Respondent,

v.

Walter Douglas HEINKEL, Appellant.

No. 81–1110.

Supreme Court of Minnesota.

July 23, 1982.

Meshbesher, Singer & Spence, Ronald I. Meshbesher and Cheryl Divine, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Thomas A. Weist, Rick Osborne and Jerry Strauss, Asst. County Attys., and Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

WAHL, Justice.

Defendant was found guilty by a district court jury of charges of kidnapping, Minn. Stat. § 609.25, subd. 1(2) and 2(2) (1980) (victim released in an unsafe place) and criminal sexual conduct in the first degree, section 609.342(d) (sexual penetration accomplished by use of a dangerous weapon). The trial court sentenced defendant for the kidnapping to 180 months in prison. Issues raised on appeal relate to the admission of evidence of pretrial and in-court eyewitness identification testimony, the adequacy of representation provided by defendant's trial counsel, and the propriety of the 180-month sentence. We affirm defendant's convictions but vacate the sentence and remand for resentencing.

On the afternoon of December 28, 1980, defendant, who was 53 at the time, used a firearm to force a young woman into her car in a shopping center in Crystal and then drove to rural Maple Grove where he forced her to submit to various types of sexual contact and penetration and caused her to believe at one point that she was in imminent danger of being murdered. Finally, after being under defendant's control for about 2 hours, the victim managed to escape from the car when she saw another car approaching. Defendant fled in her car.

The victim provided police with a detailed summary of the crimes and a detailed description of her assailant. A police drawing of the assailant, prepared with the victim's assistance and described by her as being 70% accurate, was shown on television. One person called police after seeing this drawing and reported that he had witnessed the abduction. The Hennepin County Sheriff's Deputy also contacted police and said that the person depicted in the drawing looked like defendant.

A photographic display containing defendant's picture and pictures of other men was separately shown to the victim and to the eyewitness. The victim, who had viewed other displays without selecting any pictures, selected defendant's picture and said that she was 75% sure he was the man. The eyewitness also selected defendant's picture.

Subsequently, a confirmatory lineup was held, and both the victim and the eyewitness identified defendant. They also positively identified defendant at trial. Other evidence connecting defendant to the offenses included evidence that defendant fit the physical description of the assailant in a number of significant ways, evidence that a search of defendant's home resulted in a discovery of incriminating evidence, and evidence connecting defendant to Rogers, which was given by the kidnapper as his

intended destination, and to Maple Grove, which is the city in which the sexual acts occurred.

1. Defendant makes two contentions in connection with the admission of the eye-witness identification testimony.

(a) First, he contends that the identification procedures used were impermissibly suggestive. Specifically, he argues that the photographic display was defective because the pictures were shown to the victim at her residence whereas the previous displays were shown to her at the police station, the picture of defendant was slightly larger than the pictures of the other six men, and only defendant fit the description of the assailant. He argues that the lineup was defective in that defendant was the only one whose picture had been shown to the witnesses and defendant was the only one who looked like the assailant.

 The test, which this court has used in numerous cases in determining whether pretrial and in-court identification testimony was admitted in violation of the defendant's right to due process, is whether the identification procedures used were so impermissibly suggestive as to create a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The focus of this test is the reliability of the identification, and numerous relevant factors are considered in determining this.

 We agree with defendant that the photographic display was defective in that defendant's picture was slightly larger than the others and probably should have been trimmed. Also, it is apparent that some of the men pictured did not fit the description. However, balancing all the factors, we conclude, as did the district court, that there was no very substantial likelihood of irreparable misidentification created by any suggestiveness in the photographic identification procedures used.

 With respect to the fairness of the lineup, we need say only that, although it was only a confirmatory lineup, the police made a good faith effort to find a sufficient number of look-alikes and, as the photograph of the lineup reveals, succeeded in this.

(b) Defendant's other contention relates to the fact that he was not represented by counsel at the lineup.

 The rule is that:

In the absence of a voluntary waiver of the right to counsel by the defendant, any evidence of the identification of a defendant at a post-accusation lineup held in the absence of defendant's counsel is inadmissible per se, and any subsequent in-court identification of defendant by the witnesses who viewed the lineup is inadmissible unless the evidence clearly and convincingly indicates that the subsequent in-court identification has a source independent of the improper lineup.

*State v. Cobb*, 279 N.W.2d 832, 834 (Minn. 1979). Here defendant's main argument is not that the subsequent in-court identification testimony should have been suppressed on this ground [1] but that the evidence of his identification at the lineup should have been suppressed.

The state argues that defendant did not want representation by the public defender and that he waived the right to have counsel of his own choosing at the lineup by not obtaining such counsel after having had an adequate opportunity to do so. The state also argues that, in any event, defense counsel as a matter of strategy chose not to object to this evidence on this ground and that, therefore, the issue was forfeited. Finally, the state argues that any error was nonprejudicial because the evidence of the identification of defendant from pictures and in court still would have been admitted.

 We need not decide whether at the time of the lineup defendant validly waived

---

1. As stated in *Cobb*, the factors to be considered in making such an assessment are similar to the factors considered in determining the admissibility of testimony of both in-court and out-of-court identification of a defendant challenged on due process grounds.

his right to have counsel present. *See United States v. Sublet*, 644 F.2d 737, 741–42 (8th Cir. 1981). Contrary to what defendant argues, when one is aware of an issue such as this, one should not be able to wait until after the verdict to raise it.

2. Defendant's next contention is that his trial counsel failed to represent him effectively. As grounds for this contention he cites (a) defense counsel's failure to object to the lineup identification evidence on Sixth Amendment grounds, (b) his advice that defendant not testify, and (c) his failure to ask for a more detailed cautionary instruction on eyewitness identification testimony.

■ The appropriate standard for this court to apply is set forth in *White v. State*, 309 Minn. 476, 481, 248 N.W.2d 281, 285 (1976). Specifically, the test is whether the attorney in the case under consideration exercised the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. The concern is, therefore, not with the general skills of the attorney but with whether he did a reasonably competent job of trying to assure the defendant a fair trial. A defendant claiming ineffective assistance has the burden of proving that he is entitled to a new trial.

The record does not reveal why defense counsel did not challenge the lineup identification testimony on the ground that the lineup was conducted in violation of defendant's right to counsel. Defendant did not call his former counsel at the post-trial hearing and give him an opportunity to explain his reasoning. However, trial counsel is experienced in criminal law. He may have concluded that he had a chance at getting all of the identification evidence, including the in-court identification evidence, suppressed on due process grounds but that he could only get the lineup identification evidence suppressed on Sixth Amendment grounds. He may have concluded that, if he could not get the in-court

identification suppressed, he did not want the lineup identification suppressed, because it would be useful to impeach, as he did impeach, the in-court identification by showing that the lineup was suggestive and unfair. In any event, there are valid strategic reasons for counsel's failure to object to the lineup identification evidence.

■ Trial counsel did advise defendant not to testify, but the record is clear that the defendant was repeatedly advised of his right to testify, that he understood he had this right, and that he willingly and knowingly followed his counsel's advice. Defendant has not proven his claim that defense counsel coerced him into waiving his right to testify.

The cautionary instruction on eyewitness identification testimony was adequate and, therefore, defense counsel cannot be faulted for not requesting a more detailed instruction.

■ Other allegations by defendant of ineffective representation by defense counsel do not merit discussion. A vigorous, reasonable defense, such as defendant was afforded, does not necessarily result in a favorable outcome nor does the Sixth Amendment right to counsel require that it do so.

3. Defendant's final contention relates to the sentence.

The sentencing worksheet, prepared for the trial court by the Department of Court Services, erroneously listed both offenses as severity level VIII offenses. Criminal sexual conduct in the first degree is a severity level VIII offense, but kidnapping (victim released in unsafe place) is a severity level VII offense. The worksheet also erroneously gave the presumptive sentence for kidnapping as 54 months. Given defendant's criminal history score of zero [2] the presumptive sentence for kidnapping is 24 (23–25) months, and the presumptive sentence for the sex offense is 43 (41–45) months. The 54-month term would be the appropriate

---

2. Although defendant was convicted of a number of offenses in the late 1940's and early 1950's, those convictions cannot be considered

in determining defendant's criminal history score. Minnesota Sentencing Guidelines and Commentary, II.B.1.e. (1981).

sentence duration if a 3-year minimum term were applicable. Under Minn.Stat. § 609.11, subd. 5 (Supp.1981), a 3-year minimum term is required for first offenses involving firearms, but defendant committed the crimes in question before this provision became effective. Minn.Stat. § 609.11, subd. 1 (1980), mandates a 3-year minimum term only for second offenses involving use of a dangerous weapon. The state has conceded that none of defendant's prior offenses involved use of a firearm or other dangerous weapon and that the 54-month figure given on the sentencing worksheet was apparently based on a mistaken reliance on the 1981 version of section 609.11.

■ As in *State v. Martinez,* 319 N.W.2d 699 (Minn.1982), we conclude that the particularly cruel way in which the defendant committed the offense in question justified a doubling of the length of the presumptive sentence established for the offense sentenced. Thus, the trial court was free to impose a sentence of 90 months, or double the maximum term of 45 months permitted for the sex offense without departing.

Since the trial court imposed the 180-month term for kidnapping, we cannot reduce the sentence to 90 months, because the maximum sentence in the case of the kidnapping conviction would have been 50 months (2 times 25). Presumably, if the trial court had been aware that the worksheet was in error in listing kidnapping as a severity level VIII offense, the court would have sentenced defendant for the sex offense.

We therefore vacate the 180-month sentence for the kidnapping and remand for resentencing. The trial court is free to sentence defendant for the kidnapping offense for up to 50 months or for the sex offense for up to 90 months.

Convictions affirmed; remanded for resentencing.