*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0885**

State of Minnesota,
Respondent,

vs.

Nammoun Khampanya,
Appellant.

**Filed May 2, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27CR146878

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

On appeal from a conviction of first-degree robbery, appellant argues that the district court abused its discretion by (1) denying his mistrial motion after a witness

referred to him as a possible narcotics user and (2) admitting evidence that a handgun barrel was found on his person on the day after the robbery. We affirm.

**FACTS**

On March 2, 2014, H.L. was robbed at gunpoint. H.L. had arranged to buy a cell phone through Ying Vang, so he picked up Vang at Mystic Lake Casino and drove to Brooklyn Park to meet appellant Nammoun Khampanya. They all waited in H.L.'s car at a parking lot for appellant's cousin, who supposedly had a phone to sell. After appellant made a call, a car drove into the lot and parked immediately behind H.L.'s car. Appellant pulled out a semi-automatic handgun, pointed it at the back of H.L.'s head, and said: "Give me your money and your phone or I will blow your head up." H.L. complied. Vang and appellant drove away in the other car.

H.L., who was familiar with appellant, positively identified appellant in a police lineup. Appellant was later arrested and charged with first-degree robbery.

At appellant's jury trial, two police officers testified about the consistent statements H.L. made about the robbery immediately after the crime and during a formal police interview. H.L.'s 911 call was also played for the jury in which he described appellants' getaway vehicle as a 2008 black Camry. H.L.'s trial testimony was consistent with his pretrial statements. The prosecution also offered evidence from a Mystic Lake Casino surveillance video that verified Vang getting into H.L.'s vehicle on March 2, as H.L. had described. Further, a Mystic Lake Casino employee testified that the surveillance video showed appellant and Vang entering a hotel room that was registered

2

to Vang, and Vang later leaving the hotel in a black Toyota Camry. The prosecution also introduced surveillance video from the parking lot where the robbery occurred.

During trial, defense counsel moved to suppress evidence of the barrel of a black handgun that was found in appellant's jacket pocket when he was searched by police following a medical emergency he had on the casino floor on the day after the robbery. In the very early hours of March 3, police had executed a search warrant at appellant's Mystic Lake hotel room but found nothing incriminating during the search. An officer who had participated in that search also later responded to the medical-emergency call and recognized appellant as one of the robbery suspects. Defense counsel argued that the officer's protective search of appellant that led to discovery of the handgun barrel was unreasonable because it was done "in a medical situation." The district court denied the motion, ruling that the officer had "reasonable articulable suspicion that the defendant might be armed and dangerous based on all of [the] facts that were known to him."

During Detective Shane Husarik's trial testimony, he stated that H.L. had described appellant as "Lao, approximately five foot two. His eyes were sunken in. His cheeks were puffy. He said he may be a narcotic user." Defense counsel objected on relevancy grounds and moved to strike. The district court granted the motion, instructed the jury to disregard the statement, and directed them to "follow my instructions to not consider that information in your deliberations or at any other point." The district court denied appellant's motion for a mistrial.

Appellant was convicted and received a 132-month executed sentence. This appeal followed.

## D E C I S I O N

### I. Mistrial

"[T]he state has an obligation to caution its witnesses against making prejudicial testimony." *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). "[T]he prosecutor has . . . responsibility for preparing his witnesses in such a way that they will not blurt out anything that might be inadmissible and prejudicial." *State v. Carlson*, 264 N.W.2d 639, 641 (Minn. 1978). Appellant argues that the district court should have granted his mistrial motion following Officer Husarik's testimony about appellant possibly being a narcotics user.

This court reviews for an abuse of discretion a district court's denial of a mistrial motion. *Manthey*, 711 N.W.2d at 506. "A mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *Id.* (quotation omitted); *State v. Spann*, 574 N.W.2d 47, 53 (Minn. 1998). A district court's instruction to disregard an improper comment may blunt the prejudicial effect of the comment. *Id.* Appellate courts "presume that jurors follow the court's instructions." *State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002).

Detective Husarik's statements describing appellant's features and postulating that he could be a narcotics user were prejudicial. They suggested that appellant was involved in other criminal activity that would have provided a motive for him to commit the current offense. But given the strong evidence of appellant's guilt, the effect of the prejudicial statements did not establish a reasonable probability that the trial outcome

4

would have been different without the statements. H.L. knew of appellant before the crime, and he repeatedly and consistently identified appellant and his conduct during the robbery. Surveillance videos from the robbery site and casino corroborated H.L.'s testimony. *See State v. Miller*, 573 N.W.2d 661, 675-76 (Minn. 1998) (ruling that the district court did not abuse its discretion by denying a mistrial motion when the court took steps to minimize the prejudicial effect of improper statements); *Ture v. State*, 353 N.W.2d 518, 524 (Minn. 1984) (upholding denial of mistrial motion when jury received curative instruction after a witness referred to defendant's other criminal conduct). The district court did not abuse its discretion by denying appellant's mistrial motion. *See State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992) ("Where, as here . . . the evidence of guilt is overwhelming, a new trial is not warranted because it is extremely unlikely that the evidence in question played a significant role in persuading the jury to convict." (quotation omitted)).

## II. Evidentiary Ruling

Appellant argues that the district court also abused its discretion by admitting evidence that police found the barrel of a handgun on appellant's person during a protective search conducted at the casino on the day after the robbery.[1] Officer Adam Boser had been part of the police team that executed the search warrant on appellant's

---

[1] Appellant submitted a pro se brief arguing that the handgun was found at the casino over a week after the crime. By reaching a guilty verdict, the jury rejected this evidence and relied on other evidence showing that the handgun was found the day after the crime.

hotel room on March 3, and he was the officer who later responded to the medical emergency call involving appellant on the casino floor that same night.

Appellant claims only that the handgun barrel evidence was not relevant because the prosecution did not "connect[] the handgun barrel . . . with the handgun used in the robbery." In general, "[a]ll relevant evidence is admissible." Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "[U]nfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011) (quotation omitted), *review denied* (Minn. Sept. 28, 2011). "Evidence that is probative, though it may arouse the passions of the jury, will still be admitted unless the tendency of the evidence to persuade by illegitimate means overwhelms its legitimate probative force." *State v. Schulz*, 691 N.W.2d 474, 478-79 (Minn. 2005). "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

In order to prove aggravated robbery, the prosecution had to show that appellant accomplished the crime with a dangerous weapon. *See* Minn. Stat. § 609.245, subd. 1 (2012) ("Whoever, while committing a robbery, is armed with a dangerous weapon . . . is

6

guilty of aggravated robbery . . . .").  The evidence that appellant possessed a handgun barrel on the day after the crime was relevant to prove that appellant used a handgun to commit the crime; the barrel matched the description of the weapon provided by the victim, and it was found on appellant's person within a day of the crime.  Although the state did not prove that appellant used that particular handgun barrel to commit the crime, the jury was entitled to make reasonable inferences from the handgun being found in appellant's possession.  The district court did not abuse its discretion in balancing the probative and prejudicial aspects of this evidence in reaching its decision that the evidence should be admitted.  *See United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008) ("Unfair prejudice does not refer to the legitimate probative force of the evidence, but rather its capacity to lure a jury into declaring a defendant guilty for an improper reason.").

**Affirmed.**